UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH DRESSER,

   Plaintiff,

vs.                                                                               CASE NO. 8:12-cv-1572-T-24-MAP

HEALTHCARE SERVICES, INC.,

   Defendant.
_____/

## **ORDER**

This cause comes before the court on Defendant HealthCare Services, Inc.'s ("HSI") Motion to Dismiss for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. (Doc. No. 7). Plaintiff Kenneth Dresser filed a response in opposition to the motion (Doc. No. 13), and HSI filed a reply. (Doc. No. 18).

**I. Background**

On or about July 16, 2012, Plaintiff filed a complaint against HSI, a California corporation that provides chemical dependency rehabilitation services. (Doc. No. 1). Plaintiff alleges the following in his complaint and affidavits: In early 2011, Plaintiff suffered from an alcoholic condition that required his then-fiancé, Meagan Bird, to search on the internet for a rehabilitation clinic for him. On April 8, 2011, Bird contacted HIS in Anaheim, California, and Bird was told by HSI that there was only one available bed and Plaintiff would need to go to HIS's facility in Anaheim, California immediately to occupy that bed. Bird immediately accepted and booked a flight for Plaintiff, because HSI's facility was the only one she could locate that had availability and was covered by Plaintiff's insurance.

1

On the evening of April 8, 2011, Bird told Plaintiff that he would have to go to California immediately. At the time, Plaintiff worked for Traffic Control Products, Inc. ("TCP") in Tampa, Florida, and he was fearful that he may be fired for leaving immediately. HSI represented to Bird and to Plaintiff that the Family and Medical Leave Act ("FMLA") would cover Plaintiff's absence from work and that HSI would handle and timely provide the necessary paperwork to TCP.

With the understanding that his employment would not be in jeopardy, Plaintiff traveled to California on April 9, 2011. Plaintiff was picked up at the airport and brought to HSI's facility, where he was again advised that HSI would timely notify TCP regarding his absence and would timely complete all FMLA paperwork. Additionally, HSI assured Plaintiff that he did not need to do anything regarding TCP, and TCP would not be permitted to end his employment as a result of his absence. Upon arrival at HSI's facility, Plaintiff noticed that there was significantly more than one bed available.

Early in the morning of April 11, 2011, Plaintiff followed up with HSI to ensure that his FMLA paperwork was being provided to TCP, because Plaintiff was due back at work at TCP that morning. That same day, Plaintiff received an initial evaluation, and his FMLA paperwork was completed and signed by a physician. However, Plaintiff did not know that HSI did not provide the FMLA information to TCP or attempt to contact TCP that day. As a result, Plaintiff received a no call, no show absence from TCP for that day.

On April 12, 2011, HSI still did not provide the FMLA information to TCP or attempt to contact TCP, and as a result, Plaintiff received a second no call, no show absence. On April 13, 2011, HSI finally provided the FMLA information to TCP at 6:04 p.m. EST, when it faxed the

FMLA documentation to TCP. The documentation was not received by TCP until the next morning, because TCP was closed at the time HSI sent the fax.

TCP's policy stated that if an employee received a no call, no show absence for two consecutive days, that employee would be terminated. Therefore, by April 13, 2011, after two consecutive no call, no show absences, Plaintiff's employment was already terminated and he was no longer entitled to FMLA benefits.

When Plaintiff learned of his termination he questioned HSI, and HSI stated it would attempt to clarify the situation with TCP. On April 15, 2011, HSI sent a fax to TCP at an incorrect number, and as a result, TCP continued forward with Plaintiff's termination. As a consequence of his termination, Plaintiff lost his apartment, car, and insurance. Plaintiff, unable to find suitable employment for approximately eight months, was forced to move to Nebraska and had significant personal problems while there. He later found suitable employment in Florida, but he earns less money than he did at TCP.

Based on the above, Plaintiff asserts two claims for relief against HSI. Count I is for fraudulent misrepresentation, and Count II is for negligence. In response, HSI moved to dismiss the complaint for lack of personal jurisdiction and improper venue, pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure.

**II. Standards of Review**

When a court does not conduct an evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over the nonresident defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)(citations omitted). To do this, a plaintiff must present "sufficient evidence to defeat a motion for a directed verdict." *Id.* The court must accept the facts alleged in the complaint as true, to the

extent they are uncontroverted by the defendant's affidavits. *Id.* If there is a conflict between the parties' affidavits, "the court must construe all reasonable inferences in favor of the non-movant plaintiff." *Id.*

In considering a motion to dismiss for improper venue, the court accepts the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Home Insurance Co. v. Thomas Industries, Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990). If there is a conflict between the parties' affidavits, the court construes all reasonable inferences in favor of the plaintiff. *Id.*

### III. Discussion

In its Motion to Dismiss, HSI argues that it is a California corporation with no Florida contacts, and as such, it is not subject to personal jurisdiction in Florida. In addition, HSI claims that venue is improper. In the alternative, HSI asserts that the case should be transferred to the Central District of California, where it contends venue is proper.

**A. Whether the Court May Exercise Personal Jurisdiction over HSI**

HSI asserts that it is not subject to personal jurisdiction in Florida for two reasons: (1) Florida's long-arm statute does not provide a basis for jurisdiction; and (2) the exercise of jurisdiction would not comport with the Due Process Clause of the Fourteenth Amendment. Plaintiff responds that jurisdiction is proper under both Florida's long-arm statute and the Due Process Clause.

In order to determine whether a court may assert personal jurisdiction over an out-of-state defendant, the Court must conduct a two-step inquiry. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). First, the Court must "'determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute.'" *Id.*

(quoting *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)). Second, the Court must "'examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.'" *Id.* (quoting *Frit*, 358 F.3d at 1319).

### 1. Florida's Long-Arm Statute

Plaintiff asserts that the Court has jurisdiction under Florida's long-arm statute, Florida Statute section 48.193(1)(b), which states:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> . . .
> (b) Committing a tortious act within this state.

Plaintiff claims that he has sufficiently alleged a tortious act within the meaning of this statute by alleging that HSI made fraudulent misrepresentations over the telephone to Bird and Plaintiff while Plaintiff was in Florida. To support his assertion, Plaintiff cites to *Horizon* for the proposition that "an out-of-state defendant's 'telephonic, electronic, or written communications into Florida' are sufficient to trigger jurisdiction . . . provided, however, that the cause of action arises from those communications." 421 F.3d at 1168 (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). Additionally, Plaintiff cites to case law holding that "fraudulent misrepresentations made from outside Florida and directed into Florida (by phone, fax, writing) constitute tortious acts committed within Florida under Florida's long-arm statute." *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1223 (S.D. Fla. 2009) (citation omitted). Plaintiff then asserts that the Court has jurisdiction over his negligence claim under the doctrine of pendent personal jurisdiction.

HSI argues that Plaintiff has failed to allege personal jurisdiction under Florida's long-arm statute for three reasons. First, HSI argues that Plaintiff has not successfully alleged that his cause of action arises from telephone communications with HSI. Second, HSI contends that Plaintiff has failed to state a claim for fraud, and therefore, there is no basis for personal jurisdiction. Third, HSI asserts that Plaintiff has not stated a claim for fraudulent misrepresentation because Plaintiff's claim is based on HSI's promise to contact his employer, and "[a] false statement amounting to a promise to do something in the future is not actionable fraud." *Sleight v. Sun & Surf Realty, Inc.*, 410 So. 2d 998, 999 (Fla. 3d DCA 1982).

The Court is required to construe Florida's long-arm statute "as would the Florida Supreme Court." *Horizon*, 421 F.3d at 1166-67. For the following reasons, the Court finds that Plaintiff has sufficiently alleged a tortious act within the meaning of Florida's long-arm statute by alleging fraudulent misrepresentations made over the telephone to Bird while Bird and Plaintiff were in Florida. Therefore, the Court also finds jurisdiction over Plaintiff's related claim of negligence under the doctrine of pendant personal jurisdiction.

### a. Whether Plaintiff's Fraudulent Misrepresentation Claim Arises From Telephone Communications with HSI

Plaintiff's allegations concerning telephone conversations with HSI trigger jurisdiction under Florida's long-arm statute if Plaintiff's cause of action for fraudulent misrepresentation arises from those communications. *Id.* at 1168. In order to find that Plaintiff's cause of action arises from those telephone communications with HSI, "there must be some 'connexity' that exists between the out-of-state communications and the cause of action such that the cause of action 'would depend upon proof of either the existence or the content of any of the communications . . . into Florida.'" *Id.* (quoting *Carlyle v. Palm Beach Polo Holdings, Inc.,* 842 So. 2d 1013, 1017 (Fla. DCA 2003)).

Plaintiff's fraudulent misrepresentation cause of action is based in part on the misrepresentations allegedly made by HSI during telephone conversations with Bird while Plaintiff and Bird were in Florida. Plaintiff's cause of action depends in part upon proof of both the existence and content of these communications into Florida. Accordingly, there is sufficient "connexity" between the alleged telephone conversations with HSI and Plaintiff's fraudulent misrepresentation cause of action to confer jurisdiction under Florida's long-arm statute.

### b. Whether Plaintiff Has Stated a Claim for Fraudulent Misrepresentation Sufficient to Provide a Basis for Personal Jurisdiction

HSI argues that Plaintiff has failed to state a claim for fraudulent misrepresentation by failing to allege a required element: that HSI had knowledge that its representations were false. Therefore, HSI contends, personal jurisdiction over HSI cannot be based on Plaintiff's fraudulent misrepresentation claim. HSI also asserts, without citation to case law, that HSI's communication with Bird cannot be considered for jurisdictional purposes. In order to determine whether Plaintiff has stated a claim for fraudulent misrepresentation on which personal jurisdiction may be based, it is first necessary to determine whether the Court may consider HSI's communication with Bird for this purpose.

A claim for fraudulent misrepresentation has four elements: "'(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation.'" *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (emphasis in original) (quoting *Johnson v. Davis,* 480 So. 2d 625, 627 (Fla.1985)). There is no requirement that the false statement be made directly to the party who is consequently injured by relying on the false statement. Under Florida law, it is not necessary that the false statement be

7

made directly to the injured party, "provided [that the statement is] made with the intent that it shall reach . . . and be acted on by the injured party." *Harrell v. Branson*, 344 So. 2d 604, 606 (Fla. 1st DCA 1977) (citation omitted). In *Harrell*, the plaintiff sold property at a price well below its actual value to his niece and the defendant, relying on a representation made by his niece that she and the defendant were married. *Id.* There was no direct misrepresentation from the defendant to the plaintiff. *Id.* The court held that the plaintiff was entitled to rescind the warranty deed due to fraud, stating that "'[i]t is not necessary that a direct statement be made to the representee in order to give rise to the right to rely upon the statement, for it is immaterial whether it passes through a direct or circuitous channel in reaching him'" *Id.* at 606, 608 (citation omitted). Therefore, this Court may consider HSI's communications with Bird for the purpose of determining whether Plaintiff has stated a claim for fraudulent misrepresentation upon which personal jurisdiction may be based.

  HSI also contends that Plaintiff has failed to state a claim for fraudulent misrepresentation by failing to allege that HSI knew that its representations were false. Plaintiff has alleged that HSI represented to Bird on April 8, 2011 that there was only one bed available in its facility and Plaintiff would need to go to its facility immediately in order to occupy that bed. Plaintiff contends that HSI's facility had multiple beds available, but HSI made these allegations in order to lure Plaintiff to HSI's facility. HSI has not attempted to refute any of these allegations in the affidavit that it provided to the Court. To the extent that Plaintiff's fraudulent misrepresentation claim is based on HSI's representation to Bird that there was only one bed available, Plaintiff has sufficiently stated a claim for fraudulent misrepresentation upon which personal jurisdiction may be based.

### c. Whether Plaintiff Has Stated a Claim for Fraudulent Misrepresentation Based on HSI's Promise to Contact Plaintiff's Employer

Finally, HSI asserts that Plaintiff has not stated a claim for fraudulent misrepresentation, because Plaintiff's claim is based on HSI's promise to contact his employer, and "[a] false statement amounting to a promise to do something in the future is not actionable fraud." *Sleight*, 410 So. 2d at 999. Although "[a]n action for fraud generally may not be predicated on . . . promises of future action," Florida courts have recognized that "if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform, such a promise may . . . constitute a fraudulent misrepresentation." *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001). However, the Court need not consider whether Plaintiff has stated a claim for fraudulent misrepresentation based on HSI's representation that it would contact Plaintiff's employer. The Court has already determined that, to the extent that Plaintiff's fraudulent misrepresentation claim is based in part on HSI's representation to Bird that there was only one bed available, Plaintiff has sufficiently stated a claim for fraudulent misrepresentation upon which personal jurisdiction may be based.

### d. Pendent Jurisdiction

Under the doctrine of pendent personal jurisdiction, "'[i]f the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event.'" *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1341 (S.D. Fla. 2010) (citations omitted). Plaintiff's negligence and fraudulent misrepresentation claims arose from "a common nucleus of fact[s]" because both claims are related to the Plaintiff's decision to check-in to HSI's California facility in reliance on

HSI's representations via the phone calls and the alleged injury that resulted. *Id.* Thus, the Court concludes that pendent jurisdiction exists over the remaining claims.

### 2. The Due Process Clause of the Fourteenth Amendment

Once a court has determined that the exercise of personal jurisdiction over an out-of-state defendant is appropriate under the forum state's long-arm statute, the court must then examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause. Under the Due Process Clause, a state may exercise personal jurisdiction over an out-of-state defendant that has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citations omitted).

### a. HSI's Contacts with Florida

Plaintiff asserts that the exercise of specific personal jurisdiction over HSI would comport with the due process requirement of minimum contacts with Florida due to the following: Bird located HSI on the internet; Bird informed HSI that Plaintiff was in Florida; and HSI communicated with and made misrepresentations to Bird and Plaintiff, who were in Florida, in order to gain business and lure Plaintiff to California. HSI does not dispute these allegations in the affidavit that it provided to the Court. However, HSI argues that Plaintiff has not alleged that HSI purposefully directed its activities at Florida residents. Further, HSI emphasizes, and Plaintiff does not deny, that HSI does not conduct business in Florida, was not present in Florida, has only attenuated contacts with Florida, and only had contact with Plaintiff after Bird initiated communications with HSI.

Under the Due Process Clause, an individual may not be "subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"

*Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (quoting *Int'l Shoe*, 326 U.S. at 319). The exercise of personal jurisdiction is prohibited unless the defendant's contact with the forum "state is such that he has 'fair warning' that he may be subject to suit there." *Id.* (citation omitted). Such "fair warning" exists "if the defendant has 'purposefully directed' his activities at residents of the forum" and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (citations omitted). The Supreme Court has held that the relevant foreseeability inquiry is not simply "foreseeability of causing *injury* in another State," which "is not a 'sufficient benchmark' for exercising personal jurisdiction," but instead, the foreseeability inquiry is whether "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citations omitted). In each case, there must "'be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,'" because "'[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" *Id.* at 474-75.

Personal jurisdiction over an out-of-state defendant is permitted under the Due Process Clause if the defendant expressly aimed his intentional and allegedly tortious actions at the forum state and was aware "that the brunt of [the] injury would be felt" by the plaintiff in the forum state. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). In *Calder*, a California plaintiff claimed that the defendants had libeled her in an article that the defendants, both Florida residents, wrote and edited in Florida. *Id.* at 784. The article was published by the defendant's employer, the Enquirer, which published a national weekly newspaper with its largest circulation in California. *Id.* at 785. California was "the focal point both of the story and of the harm

11

suffered," as the article was drawn from California sources. *Id.* at 788-89. The Supreme Court held that jurisdiction over the defendants was proper in California because of the effects of the defendants' Florida conduct in California: the plaintiff's emotional distress and harm to her professionalism as a California entertainer occurred in California. *Id.*

Even a single act, such as an intentional tort, "may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Licciardello*, 544 F.3d at 1285. In *Licciardello*, the plaintiff, a nationally-known musician, filed suit in Florida against his former personal manager for posting on an internet website (which was accessible in Florida) infringing material that implied that the plaintiff endorsed the defendant as a personal manager. *Id.* at 1282. The defendant was a Tennessee resident whose contacts with Florida were limited. The court concluded that the defendant had sufficient minimum contacts with Florida to support personal jurisdiction, stating:

> [The defendant] is alleged to have committed an intentional tort against [the plaintiff]--using his trademarked name and his picture on a website accessible in Florida in a manner to imply [the plaintiff's] endorsement of [the defendant] and his products. . . . The unauthorized use of [the plaintiff's] mark, therefore, individually targeted [the plaintiff] in order to misappropriate his name and reputation for commercial gain. These allegations satisfy the *Calder* effects test for personal jurisdiction--the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum. The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over [the defendant] because his intentional conduct in his state of residence was calculated to cause injury to [the plaintiff] in Florida. [The defendant] cannot now claim surprise at being haled into court here.

*Id.* at 1287-88 (internal citation omitted).

In the instant case, Plaintiff has satisfied the *Calder* effects test as articulated by the Eleventh Circuit in *Licciardello,* because Plaintiff has alleged "the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum." *Id.* at 1288; *see also Coblentz GMC/Freightliner, Inc. v. General Motors Corp.*, 724 F.

Supp. 1364, 1368-71(M.D. Ala. 1989). Specifically, Plaintiff has alleged that HSI purposefully directed its intentional and tortious activities at a Florida resident by alleging that HSI made intentionally fraudulent misrepresentations to Bird and Plaintiff in order to gain business and lure Plaintiff to HSI's California facility. Plaintiff has alleged that at the time HSI made the allegedly fraudulent representations, HSI was aware that Plaintiff was a Florida resident, because Bird had so informed HSI. Although HSI does not conduct significant business in Florida, was not present in Florida, and only had contact with Plaintiff after Bird initiated communications with HSI, jurisdiction is proper because HSI has purposefully directed its conduct toward a resident of the forum, and the litigation results from alleged injuries in the forum that arise out of and relate to that conduct.

In support of HSI's argument that a single phone call cannot satisfy the due process requirement of minimum contacts, HSI cites several cases. HSI relies on *Hou v. United Airlines Corp.*, No. 8:06-CV-1502-T-27TGW, 2006 WL 2884963 (M.D. Fla. Oct. 10, 2006), in which the plaintiff alleged that the defendants fraudulently misrepresented the status of the plaintiff's bankruptcy claim during a phone call that the plaintiff initiated from Florida. *Id.* at *2. The only alleged contact that the defendants had with Florida was that one phone call. *Id.* at *2. The court stated that the plaintiff's allegations did not demonstrate the defendants' "purposeful availment of the laws of Florida, nor [did] it follow that the [defendants] would have any expectation of being haled into a Florida court by virtue of answering a telephone call from Plaintiff." *Id.* at *3. The *Hou* case, however, is distinguishable from the instant case.

While the phone call to HSI in the instant case was not initiated by HSI, such does not make *Hou* controlling. Instead, HSI could have foreseen being haled into court in Florida as a result of the fraudulent representations it made ***in an attempt to gain business by luring Plaintiff***

13

***to its California facility***. See *Bowling v. Founders Title Co.*, 773 F.2d 1175, 1179 (11th Cir. 1985)(concluding that there were sufficient minimum contacts based on, among other things, the defendant's answering of phone calls that were initiated by the plaintiffs from the forum state and knowingly providing the plaintiffs with information during those phone calls to induce them to make a sale). HSI's knowledge that Plaintiff was a Florida resident was especially relevant here, because HSI was allegedly attempting to induce Plaintiff to travel from Florida to California.

HSI also relies on *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030 (11th Cir. 1991), in which a Massachusetts defendant, Bunstein, who worked for defendant E.F. Hutton, made fraudulent representations to Sun Bank concerning the credit worthiness of one of E.F. Hutton's account holders, Stevens. *See id.* at 1032. Stevens had moved to Florida and was trying to get a loan from Sun Bank. *Id.* Sun Bank initiated two phone calls to Bunstein, during which Bunstein fraudulently represented that Stevens had over $1 million in his accounts with E.F. Hutton and that those accounts were in Stevens' name. *See id.* Sun Bank relied on Bunstein's misrepresentations and made the loan to Stevens. *Id.* The court concluded that Bunstein did not have sufficient minimum contacts with Florida, stating:

> [A]lthough Bunstein's contacts with Florida were not attenuated, they were certainly fortuitous. That the calls originated from Florida rather than from Indiana or Idaho was purely a matter of chance.
>
> Bunstein entered into no contract or other continuing relationship or obligation, with Sun Bank that would have made it reasonable for him to foresee being haled into court in Florida. Bunstein did not seek out Sun Bank's business, and his contacts with [Sun Bank] were likewise not a result of any other activities he initiated within the forum. Bunstein's contacts with Sun Bank occurred not because Bunstein purposefully availed himself of the privilege of conducting activities within Florida, nor even because Bunstein "purposefully directed" his activities at Florida residents, but because Bunstein's Massachusetts customer moved to Florida, sought a loan from a Florida bank, and told that bank to call Bunstein in Massachusetts.

> Because these two telephone calls are the only contacts on which Sun Bank bases its argument for jurisdiction, were we to find that this court has jurisdiction over Bunstein we would have to do so solely as a result of fortuitous contacts. We decline to do so, and conclude that Bunstein lacked sufficient minimum contacts with Florida to support the district court's exercise of personal jurisdiction over him.

*Id.* at 1034 (internal quotation marks, alterations, and citations omitted).

*Sun Bank* is also distinguishable from the instant case. Unlike Bunstein in the *Sun Bank* case, HSI used the phone calls to gain Plaintiff's business and made fraudulent misrepresentations in an attempt to do so.

Finally, HSI relies upon *Mulligan v. Frank Foundation Child Assistance International*, 584 F. Supp. 2d 1332 (M.D. Fla. 2008). In *Mulligan*, the plaintiffs alleged that they relied upon misrepresentations made during a phone call with the defendant regarding the children that the plaintiffs had adopted. *See id.* at 1134. Specifically, the plaintiffs alleged that the defendant told the plaintiffs that the adopted children "were healthy and could be normalized by Plaintiffs' love," and as a result, the plaintiffs delayed seeking medical and psychological attention for the children. *Id.* The defendant's contacts with Florida occurred because the "[d]efendant, bound to finish the process of post-adoption reporting, continued its communications with [the plaintiffs] via letters, emails, and telephone calls" after the plaintiffs moved to Florida. *Id.* at 1335. Therefore, the court concluded that the defendant did not have sufficient minimum contacts with Florida and stated that "[w]hen an entity continues a relationship of communication with a person who unilaterally chooses to relocate to another state, that entity's continued communication alone does not constitute the purposeful availment of that state's jurisdiction." *Id.*

*Mulligan* is distinguishable from the instant case. Plaintiff resided in Florida at the time when Bird first initiated contact with HSI.

Accordingly, the Court concludes that HSI has sufficient minimum contacts with Florida, such that it had fair warning that it could be haled into court in Florida for its alleged intentional misrepresentations.

### b. Fair Play and Substantial Justice

Although it has been determined that HSI has sufficient minimum contacts with Florida, the Court must also determine whether the exercise of personal jurisdiction over HSI comports with fair play and substantial justice. *Burger King Corp.*, 471 U.S. at 476 (citation omitted). "These factors include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1284 (citation omitted).

HSI asserts that it would be burdensome for it to defend this litigation in Florida; Florida has little interest in a dispute over a California substance abuse facility's alleged failure to timely provide FMLA paperwork; California law would likely apply; a majority of the key witnesses are located in California; and it is unfair to subject HSI to Florida's jurisdiction based on Plaintiff's solicitation of services to be provided in California.

However, this Court finds that, like the plaintiffs in *Calder* and *Licciardello*, Plaintiff was "injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, [and as such, Plaintiff] is not required to travel to the nonresident's state of residence to obtain a remedy." *See id.* at 1288. Although HSI's witnesses may be located in California, it is clear that at least some of Plaintiff's witnesses are located in Florida. The Court concludes that because HSI allegedly made intentionally fraudulent representations to Plaintiff in order to gain business by luring Plaintiff out to California, it is not unfair to require HIS to litigate this dispute in

Florida. In addition, "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Id.* Therefore, the Court finds that personal jurisdiction over HSI in Florida is proper under both Florida's long-arm statute and the Due Process Clause.

### B. Whether Venue Is Appropriate

Pursuant to 28 U.S.C. Section 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Furthermore, a corporation is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. §1391(c)(2). Because the Court has found that HSI is subject to specific personal jurisdiction in Florida for Plaintiff's fraudulent misrepresentation claim, the Court concludes that venue is proper in this Court. As such, the Court denies HSI's motion to dismiss or transfer the case on the basis of improper venue.[1]

## IV. Conclusion

The Court concludes that personal jurisdiction over HSI in Florida is proper under both Florida's long-arm statute and the Due Process Clause. Accordingly, it is **ORDERED AND ADJUDGED** that HSI's Motion to Dismiss (Doc. No. 7) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida this 7th day of January, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of record

---

[1] The Court notes that HSI makes a four sentence argument in a footnote that this case should be transferred to California pursuant to 28 U.S.C. § 1404(a). However, the Court declines to address arguments raised solely in a footnote.